IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Earl Gene Ross, Jr. (M-54752), ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Case No. 16 C 8672 |
| v. ) | |
| ) | Magistrate Judge Iain D. Johnston |
| Shawn R. Bock, *et al.,* ) | |
| ) | |
| *Defendants.* ) | |

## REPORT AND RECOMMENDATION

It is this Court's Report and Recommendation that Defendants' request for dismissal of the complaint be granted, and that Plaintiff's claims be dismissed without prejudice for failure to exhaust his administrative remedies. Any objection to this Report and Recommendation must be filed by December 18, 2017. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

## STATEMENT

On September 2, 2016, Plaintiff Earl Gene Ross, Jr. filed a complaint pursuant to 42 U.S.C. § 1983, alleging that officers at Dixon Correctional Center subjected him to improper force, and that during the incident one of the Defendants sexually assaulted him.

Defendants answered the complaint and raised the affirmative defense that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). (*See* Dkt. No. 20, at pg. 5.) On October 25, 2017, the Court held a *Pavey* hearing on Plaintiff's exhaustion of his administrative remedies. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *see also Waggoner v. Lemmon*, 778 F.3d 586, 591-92 (7th Cir. 2015) (exhaustion is a preliminary issue that should be resolved before addressing the merits of complaint). Plaintiff and Ann Lahr of the Administrative Review Board, Illinois Department of Corrections ("ARB"), testified at the hearing. Defendants relied on exhibits attached to Plaintiff's complaint. (*See* Dkt. No. 39.)

### I. ALLEGATIONS

Plaintiff alleges that on December 28, 2015, while a prisoner at Dixon

Correctional Center, Officer Bock took him to see a doctor. Plaintiff contends that Officer Bock handled him aggressively. When he returned to his cell, according to Plaintiff, Officer Bock pushed him into his bed. Plaintiff tripped over his mattress (which was on the ground) and hit his mouth on the bunk, injuring his bottom lip.

Plaintiff then refused to give up his handcuffs, and told Officer Bock to call his lieutenant. However, when the lieutenant arrived, he told Plaintiff that he did not believe anything he had to say. The lieutenant offered to get a nurse for Plaintiff, however.

Nurses arrived to examine Plaintiff. At that point, according to Plaintiff, Officer Bock wiped his dirty shoes on Plaintiff's mattress and blankets. Plaintiff lost his temper and spit in Officer Bock's face. According to Plaintiff, Officer Bock responded by beating him and kneeing him in the ribs. Other officers were called, including Officer Zaccard. Plaintiff alleges that the officers beat him, and that Officer Zaccard struck his fingers in Plaintiff's rectum and referred to him using a racial slur. Plaintiff contends he suffered rib pain and asked the nurse for an x-ray, but did not receive one.

## II. DISCUSSION

Pursuant to the Prison Litigation Reform Act ("PLRA"), inmates who bring civil rights suits must first exhaust their administrative remedies within the correctional system. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *Pavey*, 544 F.3d at 740. To fulfill the exhaustion requirement, an inmate must comply with the procedures and deadlines established by the prison's policy. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *see Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (in order to properly exhaust his remedies, an "inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process.").

The exhaustion of remedies is a precondition to filing suit; a prisoner's attempt to exhaust his administrative remedies after filing suit is insufficient. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). The Seventh Circuit requires strict adherence to the exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "[U]nless the prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). "Unexhausted claims are procedurally barred from consideration." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016).

Because exhaustion is mandatory, the U.S. Supreme Court has held that judge-made exceptions to the requirement are impermissible, even in circumstances where the prisoner makes a reasonable mistake about grievance procedures. *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."). However, by the plain language of the statute, prisoners must exhaust only those administrative remedies that are "available." *Id.* at 1858; *see* 42 U.S.C. § 1997e(a). Additionally, the failure to exhaust available remedies is an affirmative defense, and the defendants bear the burden of proving such a failure. *See Dole*, 438 F.3d at 809; *see also Jones v. Dart*, No. 14 C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (Kendall, J.) (collecting cases and holding defendants must prove failure to exhaust by a preponderance of the evidence).

In regard to the availability of remedies, the U.S. Supreme Court has recognized three circumstances in which an administrative remedy may be unavailable: (1) when it operates as a "simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative exhaustion scheme is so opaque that the procedure is essentially "unknowable," so that "no ordinary prisoner can discern or navigate it"; and (3) when correctional officials thwart inmates from using the grievance process "through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-1860.

Plaintiff submitted a grievance about the events alleged in the complaint on January 3, 2016. (*See* Dkt. No. 39, Ex. 1.) The grievance was signed by Plaintiff and included his full name and his offender identification number, M-54752. (*Id.*) The response that Plaintiff received from his grievance officer, James Martens, identifies the offender as "Earl Ross," and contains an incorrect offender identification number, "M27331." (*Id.* at Ex. 2.) Plaintiff filled out the section of the form labeled "Offender's Appeal To The Director." (*Id.*) He included his full name and correct identification number, and dated it January 26, 2016, which he testified was the date he received the grievance response. (*Id.*) However, Plaintiff did not submit his appeal to the ARB.

Plaintiff testified that he did not submit the appeal to ARB because the response contained the wrong (or incomplete) offender name and identification number. Plaintiff testified that he was aware that his appeal of the denial of his grievance had to be submitted to the ARB, but did not do so because he wanted the Court to see the errors on his grievance response. He circled these errors and submitted the grievance and response as exhibits to his complaint in this matter. (*See* Pl.'s Compl., Dkt. No. 11, at pgs. 8-10.) Plaintiff testified that he interpreted the errors as an attempt to "set me up."

Lahr testified her duties at the ARB include reviewing prisoner grievances.

3

In preparation for the hearing, Lahr reviewed the ARB's internal grievance log, and found that Plaintiff had not submitted any grievances to the ARB. Lahr testified that the normal grievance process gives the offender 60 days from the date of the incident to submit a grievance to a grievance officer. The grievance officer then reviews the grievance, the chief administrative officers signs off on a response, and the grievance is returned to the offender. The offender then has 30 days from the date the chief administrative officer signed the response to submit it to the ARB. However, Lahr also testified that for grievances that fall within the scope of the Prison Rape Elimination Act of 2003 ("PREA"), these deadlines are not applicable. The portion of Plaintiff's grievance relating to sexual abuse falls within the scope of the PREA. As such, Plaintiff still has an opportunity to submit his grievance to the ARB. *See* 28 C.F.R. § 115.52(b)(1) (implementing regulations for PREA state that prisons "shall not impose a time limit" on the filing of grievances regarding an allegation of sexual abuse). However, the ARB may reject the portion of Plaintiff's grievance that does not relate to his claim of sexual abuse. *See* 28 C.F.R. § 115.52(b)(2) ("The agency may apply otherwise-applicable time limits to any portion of a grievance that does not allege an incident of sexual abuse.").

Based on the evidence presented at the hearing and the accompanying exhibits, the Court concludes that Defendants have carried their burden to show that Plaintiff failed to exhaust administrative remedies that were available to him. Plaintiff testified that he understood that he had to submit his grievance appeal to the ARB, so this is not a case in which the grievance procedure was "unknowable," as discussed in *Ross*, 136 S. Ct. at 1859-60. Nor is there any evidence that the grievance procedure operates as a "dead end" or that correctional officials attempted to thwart Plaintiff's efforts to use the grievance procedure. *See id.*

While it is clear from Plaintiff's testimony that he believed the errors in his name and identification number on the grievance response were done with nefarious intent, there is no evidence that prison officials were attempting to thwart Plaintiff's use of the grievance process or that the use of the wrong name and inmate number on the grievance response was anything more than a clerical error. Importantly, there is no evidence that Plaintiff attempted to have the errors corrected or pointed them out to prison officials or the ARB. Had Plaintiff submitted his appeal to the ARB and had it been rejected due to the apparent misidentification on the grievance response, Plaintiff would have an argument that his attempts to exhaust his remedies had been thwarted. *See Dole*, 438 F.3d at 811 (when a grievance is not processed due to mistakes on the part of prison employees, they may not claim the affirmative defense of failure to exhaust). In this case, however, officials at the ARB did not refuse to accept Plaintiff's appeal. To the contrary, according to Lahr, the ARB would still accept the appeal relating to Plaintiff's claim of sexual abuse should he submit it today.

For these reasons, the Court recommends that Plaintiff's complaint be

4

dismissed without prejudice for failure to exhaust. *See Johnson*, 362 F.3d at 401("[A]ll dismissals under § 1997e(a) should be without prejudice.") Dismissal without prejudice is particularly appropriate in this case given that Defendants apparently concede that Plaintiff may still properly exhaust his administrative remedies for his claim of sexual abuse by submitting his grievance appeal to the ARB. Plaintiff may re-file this lawsuit after he has completely exhausted his administrative remedies. If he chooses to do so, Plaintiff should act as quickly as possible in light of the two-year statute of limitations for § 1983 actions and any applicable tolling rules. *See Bryant v. City of Chicago*, 746 F.3d 239 (7th Cir. 2014).

Any objection to this Report and Recommendation must be filed by the date set forth above. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

Dated: November 29, 2017          By: _____
                                                        Iain D. Johnston
                                                        United States Magistrate Judge